Willie WILLIAMS, etc., Plaintiffs,

v.

Michael LANE, et al., Defendants.

No. 81 C 355.

United States District Court,
N.D. Illinois, E.D.

Jan. 22, 1990.

Jack A. Rovner, Hugh J. Totten, Kirkland & Ellis, Chicago, Ill., for plaintiffs.

Neil F. Hartigan, Illinois Atty. Gen., Francis X. Lyons, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER [1]

SHADUR, District Judge.

Willie Williams ("Williams") filed this 42 U.S.C. § 1983 ("Section 1983") class action some nine years ago against a number of Illinois prison administrators, charging them with constitutional violations arising out of living conditions and institutional programs provided to inmates in protective custody at Stateville Correctional Center ("Stateville"). This Court's "Opinion I," 96 F.R.D. 383 (N.D.Ill.1982) among other things certified the plaintiff class under Fed.R.Civ.P. ("Rule") 23(b)(2) and allowed Williams to proceed on behalf of (*id.* at 389):

> All persons who are now or who are hereafter designated under Administrative Regulation 808 for residence in a Protective Custody Unit at Stateville Correctional Center.

After extensive preparation by the litigants and an extended bench trial, this Court issued its findings of fact and conclusions of law in "Opinion II," 646 F.Supp. 1379 (N.D.Ill.1986), ruling in plaintiffs' fa-

---

1. See Appendix 1.

vor on the bulk of their claims.[2] That led in turn to (1) issuance of a final injunction against further violations of the constitutional rights of members of the plaintiff class and (2) appointment of Special Master Norval Morris ("Morris") to propose a remedial order (which has since been entered) among other things.

In part Opinion II at 1408–09 determined that plaintiffs had established the predicate for an award of compensatory and punitive damages (leaving for future decision the amounts of such damages and the identity of the defendants who would be liable for any punitive damages awarded). As a prelude to any award of damages, this Court has since then asked the parties for submissions on two issues that must be resolved before defendants can produce an accurate list of members of the class eligible to receive damages: (1) the closing date for class membership[3] and (2) the period for which damages may be recovered. After reviewing those submissions and the law, this Court now adopts plaintiffs' position and holds:

1. For all purposes the closing date for class membership is May 31, 1989, the date on which Special Master Morris determined that the constitutional violations had ended.

2. Class members are eligible to receive damages for constitutional violations occurring between May 1, 1979 and May 31, 1989.

### Class Closing Date

Plaintiffs urge this Court to adopt as the closing date for class membership May 31, 1989, the date on which Special Master Morris reported that defendants had sub-

stantially complied with this Court's remedial order. Plaintiffs accurately point out that defendants' failure to satisfy their constitutional obligations—even after this Court had spelled out in detail what those obligations entailed—was in the nature of a continuing harm inflicted upon all inmates in protective custody, whether those inmates entered protective custody before or after the entry of injunctive relief by this Court. Plaintiffs conclude that because Special Master Morris first determined on May 31, 1989 that the continuing harm had ceased, all inmates in protective custody before that date were victims of that harm and should therefore be included in the damage class.

Defendants meet that focused argument with a blunderbuss response. Indeed, defendants' answer to this Court's request for suggestions as to the closing date for class membership takes the form of erecting an elaborate system of battlements designed to repel any comer seeking damages. Unfortunately for defendants, the key underpinning for that entire system is the idea of "one-way intervention," a concept that is really inapplicable to the present case.

Defendants' most sweeping argument is that *no* damage class is appropriate at all because plaintiffs failed to obtain certification of the class under Rule .23(b)(3). Defendants correctly point out that this Court's decision to certify the class was made under Rule 23(b)(2) rather than Rule 23(b)(3) (see Opinion I at 386–87) and that plaintiffs did not pursue this Court's reference (*id.* at 385 & n. 2) to the possibility of certification under Rule 23(b)(3) as well.[4]

---

**2.** All further references to the two earlier opinions will omit the volume number and reporter, instead citing only the page number in the form "Opinion I at ——" or "Opinion II at ——."

**3.** Both parties have stipulated that the appropriate opening date for class membership is April 30, 1982, the date on which Williams filed the Amended Complaint containing classwide claims. As n. 4 explains, adoption of that date was necessitated by plaintiffs' decision not to attempt certification of the class under Rule 23(b)(3).

**4.** Defendants' Mem. 1 characterization of that possibility as one for "recertification" of the class under Rule 23(b)(3) is misleading. · First, if defendants use the word "recertification" to mean outright replacement of the current Rule 23(b)(2) certification by a comprehensive certification under Rule 23(b)(3), that was only one option that Opinion I at 385 n. 2 considered. Indeed, the "numerous unanswered questions" that then caused this Court to decline to certify the past occupants of the protective custody wing included:

> For example, would Williams seek a Rule 23(b)(3) certification as to past occupants

Rule 23(b)(2) allows certification of a class if, among other things:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Rule 23(b)(3), on the other hand, allows certification of a class if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Under Rule 23(c)(2), for class members to qualify for Rule 23(b)(3) certification they must additionally be afforded "the best notice practicable under the circumstances," including notice that:

(A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

Those requirements need not be met for certification under Rule 23(b)(2), and they have not in fact been met in this case.[5]

Defendants do not contend that the quoted Rules expressly require certification under Rule 23(b)(3) before a class may be awarded damages. As Opinion I explicitly recognized (see the language cited and quoted in n. 4 to this opinion) and numerous cases have confirmed (see, e.g., *Williams v. Burlington Northern, Inc.,* 832 F.2d 100, 103–04 (7th Cir.1987)[6]), certification under Rule 23(b)(2) may be appropriate even where plaintiffs seek damages, as long as injunctive relief is additionally appropriate. Instead, defendants say it would be unfair and in violation of the spirit of the 1966 amendments to Rule 23 to tax defendants with class-wide damages, given the procedural history of the instant case.

Defendants begin by noting that even though this Court has not yet ordered notice to potential members of the plaintiff class, it has already (see Opinion II at 1409–10) made a liability determination against defendants that will be law of the case on the damages issue. They continue with the proposition that under the Due Process Clause the unnamed class members seeking damages would not be bound by an unfavorable judgment on the merits until they were afforded the notice and

---

alone (given the availability of Rule 23(b)(2) to present and future occupants)? ... If not, is it appropriate to keep the Rule 23(b)(2) certification at all, or should Rule 23(b)(3) simply extend to everyone (past, present and future)?

Second, defendants, particularly in their arguments relating to the damage period discussed later in the text, seem to imply that this Court's discussion of the Rule 23(b)(3) possibility was related to the availability of damages under Rule 23(b)(2) as opposed to Rule 23(b)(3). Not so. In fact Opinion I, *id.* (emphasis added) *instead expressly identified* this Court's concern at the time as focusing on plaintiffs' inability to include, in the plaintiff class, persons who had occupied the protective custody unit only *prior* to the filing of the then-current Amended Complaint:

Rule 23(b)(2) looks to injunctive relief (*primarily though not exclusively*), and past confinees need no such remedy.

In addition, Opinion I at 387 stated:

That plaintiffs also seek some monetary relief does not defeat a Rule 23(b)(2) determination, for the primary relief sought is injunctive. In short, nowhere in *Opinion I* did this Court even intimate that Rule 23(b)(2) certification would not afford the relief plaintiffs now seek.

5. Rule 23(d) leaves to the discretion of the trial court the decision whether to provide notice to potential members of Rule 23(b)(2) classes.

6. *Williams* dealt with an objection by a class member who complained she had been deprived of her opt-out opportunity by the absence of a Rule 23(b)(3) notice and certification. That objection was rejected for reasons equally applicable here. But *Williams* is only exemplary of the cases upholding (both before and after Opinion I) the propriety of Rule 23(b)(2) certification where monetary as well as the primary injunctive relief is sought. As the later discussion in the text reflects, that notion applies with special force where (as here) a fluid class is involved.

opt-out opportunity provided by Rule 23(c)(2). They then conclude that to assess damages against defendants on the basis of the earlier liability determination would allow plaintiff class members to take advantage of that ruling without ever having risked an unfavorable judgment—the kind of "one-way intervention" that the 1966 amendments to Rule 23 were specifically designed to eliminate. This situation, defendants insist, cannot now be cured with notice and an opportunity to opt out because liability has already been determined.

That set of purportedly linked propositions compels an analysis of the competing policies behind Rule 23's various provisions. Most broadly, Rule 23 is intended to accommodate lawsuits to vindicate shared rights of widely-dispersed individuals where joinder of all the interested parties would be impractical. But vindication of those rights additionally implies its opposite: the full exoneration of those found innocent of alleged violations of collective rights. To provide for the complete vindication of meritorious group claims and the complete exoneration of falsely accused defendants, Rule 23(c)(4) requires both plaintiff class members (whether or not personally participating in the class action) and defendants to be bound by judgments on class claims. Because different contexts create different obstacles to achieving the requisite binding effect, Rule 23 provides several avenues for bringing class actions. This case involves two of these avenues.

■ If members of the plaintiff class seek *only* injunctive or declaratory relief,

their class is most commonly certified under Rule 23(b)(2), which readily leads to binding all members of the class to both favorable and unfavorable judgments. Members of such a class generally share a common interest in the direction and outcome of the case and, although individuals may differ on the most effective tactics to achieve that outcome, a court does not violate the rights of individual class members by failing to provide individual notice of the pendency of the class action or an opportunity to withdraw and pursue claims individually.[7] Because members of the plaintiff class have homogenous interests as to the injunctive relief, their interests are sufficiently protected by the Rule 23(a)(4) requirement that the court must determine that the class representative will "fairly and adequately protect the interests of the class" (see 7B Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1786, at 195 (2d ed. 1986)).

If however members of the plaintiff class seek damages only, their class is most commonly certified under Rule 23(b)(3). Noting that *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) held that notice and an opportunity to be heard are central requirements of procedural due process, the drafters of the 1966 amendment of Rule 23 (see Advisory Committee's Note to Rule 23, 39 F.R.D. 69, 98–107 (1966) ("Note"[8])) incorporated those constitutional requirements into Rule 23(c)(2). *Eisen*, 417 U.S. at 173–77, 94 S.Ct. at 2150–52, revisited that history and held that Rule

---

**7.** Although our Court of Appeals once held that notice was required in all class actions, even if injunctive relief was the only relief sought (see *Schrader v. Selective Service System Local Board No. 76 of Wisconsin*, 470 F.2d 73 (7th Cir.1972)), that is simply not good law today. *Schrader* quoted for that proposition the one then-existing Court of Appeals decision, *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir.1968). But the Supreme Court's decision at a later phase of *Eisen*, 417 U.S. 156, 177 n. 14, 94 S.Ct. 2140, 2152 n. 14, 40 L.Ed.2d 732 (1974), observed that Rule 23 requires notice *only* to members of classes certified under Rule 23(b)(3), not to those certified under Rule 23(b)(2). *Bijeol v. Benson*, 513 F.2d 965, 968 n. 3 (7th Cir.1975) then said *Schrader* "will presumably have to be reexamined" in light of what the Supreme Court

had said in *Eisen*. And since then the *Schrader* bright-line rule has been implicitly rejected in *Fontana v. Elrod*, 826 F.2d 729, 732 (7th Cir. 1987):

> Class actions under [Rule] 23(b)(2) ... are primarily designed for injunctive and declaratory relief and, when employed in this fashion, do not require notice nor an opportunity to opt out of the class.

Defendants Mem. 4 n. 4 acknowledges that *Schrader* no longer reflects the law.

**8.** As with this Court's Opinions I and II, citations to the Note will omit the reference to 39 F.R.D. and include only the page number ("Note at ——").

23(c)(2) requires personal notice to all members of the Rule 23(b)(3) plaintiff class "who can be identified with reasonable effort." Since then *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811–12, 105 S.Ct. 2965, 2974–75, 86 L.Ed.2d 628 (1985) explicitly held that due process required both notice and an opportunity to opt out before judgment may bind a known but absent member of a damage-seeking class.

Those clearly defined polar extremes are not matched by an equally uniform rule where a plaintiff class seeks both injunctive and monetary relief. In such cases, courts have adopted various approaches to attaining the economy of a single dispositive adjudication while at the same time assuring due process to absent class members and repose to defendants.

Some cases have allowed damage claims to be adjudicated for a Rule 23(b)(2) class without any notice or opportunity to opt out given to absent plaintiffs. Thus *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 781 (9th Cir.1986) granted monetary relief to members of a Rule 23(b)(2) class of recipients of pension funds found to have been calculated in violation of Title VII's ban on sex discrimination.[9] *Parker v. Local Union No. 1466, United Steelworkers of America, AFL–CIO,* 642 F.2d 104, 107 (5th Cir.1981) (per curiam) reached the same result, including the affirmance of an award of punitive damages, for a plaintiff class injured by violations of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 et seq. (1976).

Other courts, focusing on due process concerns, have held that the presence of monetary claims in a Rule 23(b)(2) action requires some kind of notice to absent members. In *Allen v. Isaac,* 100 F.R.D. 373, 375–77 (N.D.Ill.1983) this Court's colleague Honorable William Hart ordered notice and an opportunity to opt out in a Title VII lawsuit in which the class was certified under Rule 23(b)(2) but the case was actually a "hybrid" (including both injunctive and

monetary relief). In *Fontana,* 826 F.2d at 732 our Court of Appeals quoted *Johnson v. General Motors Corp.,* 598 F.2d 432, 433 (5th Cir.1979) for the proposition that if damages are sought as part of a Rule 23(b)(2) action "due process does not require notice before the individual monetary claims of absent class members may be barred." And as already pointed out earlier, *Williams,* 832 F.2d at 103 has since opined that due process did not necessarily require that members of a Rule 23(b)(2) class seeking both injunctive relief and damages be given an opportunity to opt out of the damages class before judicial approval of a damage settlement *if* absent members had been afforded notice of the settlement, an opportunity to object and adequate mechanisms to resolve their objections.

Where as here the predominant relief is injunctive, it has commonly been said that as between the two provisions a certification under Rule 23(b)(2) is preferred—at least as to the injunctive relief portion of the claim. As 3B Moore & Kennedy, *Moore's Federal Practice* ¶ 23.31[3], at 23–236 to –238 (2d ed. 1987) (footnotes omitted) explains:

> If an action can be maintained under (b)(1) and/or (b)(2), and also under (b)(3), the court should order that the suit be maintained as a class action under (b)(1) and/or (b)(2), rather than under (b)(3), so that the judgment will have res judicata effect as to all the class (since no member has the right to opt out in a (b)(1) or (b)(2) suit), thereby furthering policy underlying the (b)(1) and (b)(2) class suits. This preference for (b)(1) and (b)(2) class suits may also avoid the costs of the type of notice which would otherwise be required in a (b)(3) action.

Consistently with the latter consideration, many courts have required that the case be bifurcated to allow the injunctive relief to be adjudicated under Rule 23(b)(2) and the damage claims to proceed separately, either as a class action under Rule 23(b)(3) or

---

9. *Probe, id.* at 781–83 declined to give damages to those plaintiffs whose benefits had been calculated before the change of law effected by *Arizona Governing Committee v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983). No such problem of retroactivity exists in the current case.

as individual claims. *Williams,* 832 F.2d at 103 said that may be the best solution where the plaintiff class is not sufficiently homogeneous to insure fairness in consideration of the damage claims of absent members and where other procedures insuring such fairness are absent.

■ Neither side has referred to, nor have this Court's own efforts been able to locate, any case in precisely the same procedural posture as the case at hand. It is one thing to determine at the certification stage which of the available approaches will best balance the competing considerations of procedural fairness and repose, but it is quite another to find (as defendants would have it) that this Court's decision at the certification stage has forever foreclosed the assessment of damages pursuant to a prenotice liability determination. This Court need not now relitigate the propriety of its initial decision to certify under Rule 23(b)(2) but not under Rule 23(b)(3), nor need this Court now determine to what extent notice and an opportunity to opt out will be proper at some later date.[10] Most importantly for the current decision, even if it is assumed arguendo that this Court must provide an all-encompassing notice similar to that provided by Rule 23(c)(2) before making any determination of class damages, the ensuing discussion demonstrates that no danger of one-way intervention is created by this Court's determination of liability in Opinion I.

Rule 23 assumed its present form in 1966, when the earlier version was substantially amended to eliminate the possibility of what came to be called "one-way intervention." Drafters of the amendments were concerned that Rule 23's then-existing provision for "spurious" class actions gave members of a plaintiff class an unfair opportunity to withdraw from a case after a judgment on the merits, thereby enabling them to wait and opt out of the class if the judgment were unfavorable even though defendants would be bound regardless of the outcome (see Note at 98–99). *Premier Electrical Construction Co. v. National Electrical Contractors Association, Inc.,* 814 F.2d 358, 362 (7th Cir.1987) described the results of the amendments:

> Under the scheme of the revised Rule 23, a member of the class must cast his lot at the beginning of the suit and all parties are bound, for good or ill, by the results.

But thoughtful analysis shows that such overriding concern for one-way intervention legitimately arises only where monetary relief is the sole relief sought, not where as here injunctive relief was and is so importantly at stake.

First, as a practical matter defendants are simply wrong in theorizing that early Rule 23(c)(2) notice is always required where monetary relief is sought in addition to an injunction. In this case the claimed constitutional violations affected a large number of potential plaintiffs and continued long after the filing of the Complaint. In the context of such continuing violations, defendants' theory would place representative plaintiffs and their class counsel on the horns of an impossible dilemma: If they seek immediate injunctive relief to end the continuing violations, the concurrent requirement to give early notice and an opportunity to opt out would close the plaintiff class long before the violations actually ceased; and if instead they were to seek full damage recoveries for all class members, they must wait to obtain injunctive relief until after a full-blown trial and determination on damages as well. That would pose an inherent conflict of interest for class counsel and the class representative in every fluid class situation, destroying the utility of the class action as a vehicle for such cases.

---

**10.** Of course this Court will entertain motions as to the nature and scope of any notice to be afforded members of the plaintiff class before any award of damages is made. Neither side is therefore foreclosed from arguing in the future as to the appropriate provisions for personal notice and an opportunity for class members to withdraw. Defendants must be aware, however, that any wholesale exercise by class members of a full-blown and unqualified opportunity to withdraw would confront defendants with the potential for upwards of 1,000 individual claims for damages, with each successful claim carrying with it a separate right to attorneys' fees under 42 U.S.C. § 1988.

Second, in spite of the Rule 23(c)(1) admonition that the class be certified "as soon as practicable after the commencement of an action," it is well settled (see, e.g., *Jimenez v. Weinberger*, 523 F.2d 689, 697 (7th Cir.1975)) that the district court has substantial discretion to determine when certification is practicable (so long as it does not come after the decision on the merits, of course). To be sure, *Gert v. Elgin National Industries, Inc.*, 773 F.2d 154, 159–60 (7th Cir.1985) held post-*Jimenez* that certification under Rule 23(b)(3) required notice to class members and an opportunity to opt out *before* decision on the merits of the class damage claims if that decision is to be binding on unnamed members of plaintiff class.[11] But defendants have not directed this Court's attention to a single case in which a plaintiff class had been certified under Rule 23(b)(2) in a case seeking both injunctive and monetary relief, and had then lost on the issue of liability for purposes of determining injunctive relief, and in which the previously unnamed members of the class were then held *not* bound by that judgment in a later action for damages.[12]

On the contrary, this Court's research has turned up several cases in which district courts, facing at the certification stage the issue of how best to balance the competing interests in hybrid class actions, have rejected any such view and have instead expressly declined to require notice and an opportunity to withdraw until *after* a liability determination. For example, *Paddison v. Fidelity Bank*, 60 F.R.D. 695, 697–99 (E.D.Pa.1973) denied plaintiff's motion to certify a class under both Rule 23(b)(2) and Rule 23(b)(3), where plaintiff had sought such certification to allow consideration of both injunctive and monetary relief in a Title VII discrimination case. Instead the court certified the class under Rule 23(b)(2) only, reserving the question of any need for Rule 23(b)(3) certification (with its attendant notice and opportunity to withdraw) until after liability had been determined:

> During the litigation of whether injunctive relief will be given in any (b)(2) class action, certain factual issues must be resolved. They are inevitably logical antecedents for the probable existence of class handleable past money damages also. If plaintiffs lose, class handling of past damage issues is clearly inappropriate and a moot issue. If plaintiffs win, the Court is then better able to say whether a (b)(3) designation on the issue of past money damages would be appropriate for the class or a part of the class.

■ As *Paddison* suggests, accepting defendants' argument at this juncture of this already ancient litigation would not advance the ball any. While this Court obviously cannot determine the preclusive effect of its own judgments, chances are that if this Court were to order damages only to the named plaintiff (Willie Williams) and no one else, that would simply delay final adjudication still more without advancing the cause of one-way-intervention-busting that defendants purport to hold so dear. Other members of the class would not be barred by res judicata from bringing separate damage actions, or even from filing a new class action seeking damages and moving for certification under Rule 23(b)(3), because the original action would not have litigated the damage claims of absent class members.[13] Nor would limita-

---

11. *Jimenez*, 523 F.2d at 689 had anticipated such a holding by pointing out that the certification timing requirement might well be different in Rule 23(b)(2) and 23(b)(3) cases.

12. It should be noted that this is not a purely academic question, because Opinion II at 1407–08 did in fact include a finding of no liability on plaintiffs' Eighth Amendment claim. Thus defendants' argument implies a belief that this Court's Eighth Amendment ruling is binding only upon named plaintiffs.

13. In fact, if defendants' theory were correct and if class members were *not* bound by a negative determination on damages because they were not afforded notice and an opportunity to withdraw prior to a determination on liability, it would surely be anomalous to find that the same class members (again without notice or an opportunity to withdraw from the first action—that is, this case) were barred by res judicata on the ground that the earlier action was brought and dismissed without the damage issue ever having been raised. That conclusion follows a fortiori from *Crowder v.*

tions bar any such claims.[14]

■ At the same time, because *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) and *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) have eliminated the mutuality requirement for collateral estoppel (both "defensive" and "offensive"), defendants would be barred in all events from relitigating the issue of liability because it has already been fully litigated.[15] Defendants place heavy reliance on *Premier Electrical,* 814 F.2d at 367, which held that a member who opts out of a Rule 23(b)(3) plaintiff class after a favorable judgment on the merits and the subsequent settlement of damage claims cannot take advantage of that judgment in a later action against the same defendant. But in doing so defendants fail to recognize that *Premier Electrical, id.* at 365 expressly distinguished that case from two cases much more closely related to this one.

In *Crowder,* 687 F.2d at 1007–12 our Court of Appeals was faced with a prisoner's Section 1983 suit for damages arising out of assertedly unconstitutional prison conditions. Defendants argued on appeal (*id.* at 1008) that plaintiff's action should have been barred by res judicata because he had participated in an earlier successful class action seeking solely injunctive relief. As already observed in n. 13, the Court of Appeals *refused* to apply res judicata to bar plaintiff's claims. In addition, the case was remanded to the district court to determine on the basis of *Parklane Hosiery* "whether and to what extent collateral estoppel should preclude relitigation of issues relevant to [the individual damages] claim." In so doing, the Court of Appeals made crystal clear its opinion on the substantive issues controlling liability (687 F.2d at 1011):

> On the record before us, we can see no reason why plaintiff should be prevented from using collateral estoppel in this case to bar defendants from relitigating the constitutionality of the conditions in the [prison] at the time Crowder was confined.

This Court sees no reason to distinguish the result in *Crowder* from the result that would obtain in the current case if the damage portion were to proceed to separate trials. If an inmate may (as in *Crowder*) file two separate suits—one under Rule 23(b)(2) for injunctive relief and the second individually for damages—and may

---

*Lash,* 687 F.2d 996, 1008 (7th Cir.1982), quoting *Bogard v. Cook,* 586 F.2d 399, 408–09 (5th Cir. 1978):

> We agree with the fifth circuit that it would be "a harsh and improper application of res judicata to hold, on the basis of the notice sent out in [a previous class action suit] that prisoners forfeited their rights to personal redress for lack of knowledge that federal law … required that injunctive and monetary relief be sought in one action."

If *Crowder* thus balked at applying res judicata to damage claims on the basis of a notice actually sent out in an earlier case, how can it be said that res judicata should apply where, as here, *no* notice would have ever been given in the injunctive relief action?

**14.** Some 15 years ago *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 552–53, 94 S.Ct. 756, 765–66, 38 L.Ed.2d 713 (1974) held that the filing of a putative class action complaint tolls the running of the statute of limitations as to potential plaintiffs who seek to intervene after the suit is ruled inappropriate for class action status. Since then *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983) has built upon that decision to hold that such filing

additionally tolls the statute as to those who later seek to file separate actions as well:

> Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action.

**15.** In the theoretical later lawsuit by unnamed class members, defendants might find themselves able to relitigate this Court's holding that they were not entitled to qualified immunity, because that determination was in a sense not "necessary" to a resolution of the injunctive relief issue. That in itself gives a clue to the real motive for defendants' argument—in the name of preventing plaintiffs from benefitting from a favorable judgment without risking an unfavorable one, defendants are really trying to maneuver themselves into a position to get out from under their own adverse judgment. But that approach, so typical of defendants' intransigence that has marked too much of this litigation, must fail for the reasons discussed in this opinion.

use offensive collateral estoppel to bind defendants in the damage suit to the liability determination previously reached in the suit for injunctive relief, that same inmate must be able to obtain the same result here by filing a single action with separate claims for injunctive and monetary relief and treating them sequentially in a single court proceeding. *Premier Electrical* itself distinguished *Crowder* in terms that fit this case rather than *Premier Electrical* (814 F.2d at 365):

> When there are bound to be two separate actions, as we assumed in *Crowder,* a plaintiff who does not opt out of the injunctive action is entitled to keep his victory, as he will be bound by defeat. (*Crowder* is a case of mutual estoppel.) It serves the interest of economy to have as few issues litigated in the second suit as possible.

By contrast the *Premier Electrical* court found (*id.*) that in the situation before it there were not "bound to be" two actions because the plaintiff there had purposefully waited to see how the damage claims would be settled before opting out of the class.

Similarly, *Premier Electrical* observed that *Saunders v. Naval Air Rework Facility,* 608 F.2d 1308, 1312 (9th Cir.1979) had stated (albeit without much discussion) that a defendant facing claims for both injunctive and monetary relief in a single suit would presumably not be able to escape an adverse finding of liability for purposes of injunctive relief if it had to face a second suit for damages by a member of plaintiff class allowed to opt out before a damage settlement. *Saunders, id.* said on that point:

> To require appellants to opt out of the [Rule 23(b)(2)] class as a condition to pressing their individual claims would require them to abandon all rights to the class-wide relief provided and, presumably, require them to litigate on their own behalf their rights to such form of relief. The opt-out practice as we understand it, limited as it is to (b)(3) actions, assumes the relief sought in the independent action to be separate and apart from that awarded to the class by injunction or declaratory judgment. It does not assume the relitigation of that which has been settled by class-wide injunctive or declaratory relief.

*Saunders* concluded by remanding to the district court for a full review of objections that had been made to a proposed settlement agreement.

It is thus plain that allowing the class members to go forward here to press their damage claims presents no more opportunity for one-way intervention than would requiring them to file a new action or actions. As *Paddison,* 60 F.R.D. at 697 put it at the initial certification stage:

> The defendant loses nothing but the defendant gains protection against harassing and repetitive suits from [a designation certifying the class under Rule 23(b)(2) rather than Rule 23(b)(3)], since the class is then bound by the outcome as *res judicata,* and if the defendant wins no member of the class may sue him again regarding the same issues. Without such a designation he is open to repetitive suits even if he wins, but does not thereby gain any assurance that class members cannot use facts necessarily established by the case as *res judicata* against him if he loses, because of the demise of the mutuality of estoppel rule in federal question cases after the decision of *Blonger–Tongue* . . . .

To the same effect, *Williams v. Local No. 19, Sheet Metal Workers International Association,* 59 F.R.D. 49, 56 (E.D.Pa.1973) —like *Paddison*—deferred class notice for damage relief until after a determination of discrimination, stating:

> If the defendants are successful, the class will be bound, and all members of the class will be precluded from raising any claim of broad-base racial discrimination by defendants during the period in question (though, of course, claims of limited specific individual discrimination would be unaffected). If the plaintiffs are successful, notice will be given to the class so that individual members may then appear to prove their class membership and specific damages. Any individual infirmities, barring recovery, applica-

ble to specific members, will be dealt with at that time.

Defendants also cite *Jimenez,* 523 F.2d at 697–98 for the proposition that any certification after liability has been decided would countenance one-way intervention. But if defendants had chosen to read on in that same case (*id.* at 699–702), they would have seen that there the error assigned to the district court was in its not having made a decision on class certification *at all* (even though the action met all the criteria of Rule 23(b)(2)) until after the Supreme Court had found defendants liable on direct appeal and had remanded the case for determination of damages. Accordingly our Court of Appeals was not addressing the issue presented here: whether damages should be available on the basis of a pre-notice liability determination entered in favor of an already properly certified Rule 23(b)(2) class. Even so, and even after stating (*id.* at 699) "that reversal would almost certainly be required if this were a class action maintained under [Rule 23(b)(3) ]," *Jimenez* found that the belated certification was harmless and that an award of damages posed no danger of one-way intervention (*id.* at 700–01):

> [A] reversal of the class aspect of the district court order would no doubt be followed immediately by a new class action to be brought by a different named plaintiff. At least there would be no legal objection to such an action.... As a practical matter, it is difficult to identify any substantial rights of the parties that are likely to be affected by the difference between class relief in this case and class relief in a case that would presumably be filed tomorrow if this one were to be reversed. All that appears to be at stake is the possibility that the Secretary may benefit from a combination of past illegal acts and a possible future lack of diligence by potential new class representatives.

In a last-ditch effort, defendants urge that this case is indistinguishable from *Hudson v. Chicago Teachers Union, Local No. 1,* 117 F.R.D. 413, 415 (N.D. Ill.1987), in which this Court's colleague Honorable Nicholas Bua declined to certify a damage class where both injunctive and monetary relief had been sought, because to allow such certification would create a danger of one-way intervention. Once again defense counsel present a flawed analysis of the issues. In *Hudson* the suit was initially brought by seven individuals challenging the procedure followed by Chicago Teachers Union ("Union") in determining the amount that nonunion teachers—still members of the bargaining unit served by Union—must pay Union as their proportionate share of Union's collective bargaining expenses. After Judge Bua had rejected plaintiffs' constitutional claims (573 F.Supp. 1505 (N.D. Ill.1983)), our Court of Appeals reversed (743 F.2d 1187 (7th Cir. 1984)) and the Supreme Court then affirmed that reversal and remanded for determination of the appropriate remedy (475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986)). At that stage plaintiffs moved for (and Magistrate Lefkow recommended) certification as a class action on behalf of all nonunion teachers for purposes of notifying those teachers of their right to object to any future Union proportionate share plan. Under the magistrate's proposal, those class members objecting to such a plan could seek monetary relief.[16]

On remand Judge Bua denied the motion for certification. Because the Court of Appeals and Supreme Court had already granted the originally-sought injunctive relief, he reasoned, any putative class would have to be certified pursuant to Rule 23(b)(3) because its primary purpose would be the pursuit of money damages. Such certification would be improper, he concluded, because the avoidance of one-way inter-

---

**16.** Although the action had from its inception included a request for class certification, the case—originally set for hearing on the individual plaintiffs' motion for preliminary injunction—proceeded by agreement to a full trial on the merits pursuant to Rule 65(a)(2) (573 F.Supp. at 1507). Judge Bua's initial decision led him to conclude that no ruling had to be made on the motion to proceed as a class action, which he deemed moot (*id.* at 1522). Thus the case went up to the Supreme Court and back down again as a purely individual action.

vention requires class certification before any determination on the merits.

As a simple recital of those facts demonstrates, defendants here fail (or refuse) to recognize that *Hudson* presented a real danger of one-way intervention that is simply absent in the current case. Because injunctive relief there was dealt with fully before *any* class had been certified, the liability determination on which that relief rested was binding *only* on the seven individual plaintiffs who had participated up to that point.[17] If as here the *Hudson* plaintiffs had obtained certification of their class under Rule 23(b)(2) *before* the determination of defendants' liability for injunctive relief, that determination (whether favorable or unfavorable) would have bound even absent class members, thus eliminating the danger of one-way intervention. In that event plaintiffs would have been limited to one bite at the apple had they lost, but in winning they would have been entitled to the rest of their meal.[18]

■ In the current case it is defendants who strive for a second bite of the apple after failing the first time around. It is enough to defeat that effort to find (as this Court has) that no danger of one-way intervention exists under the circumstances here. But there is a second and independent policy reason for causing the damage action here to go forward on a class basis, rather than allowing defendants to relitigate the vigorously-contested issues of their liability: the principle that by proceeding as they did to a full adjudication of the merits of their liability, defendants implicitly waived the right to complain about improper certification. Some explanation of that alternative proposition is in order.

*Katz v. Carte Blanche Corp.*, 496 F.2d 747, 758–62 (3d Cir.1974) (en banc) first established an exception to the rule that one-way intervention is impermissible under Rule 23(b)(3) by permitting what has become commonly known as a "test case." *Katz* allowed the class representative to proceed individually until judgment was reached on the merits, and only then to give class notice in case of a positive determination of liability, where defendant had willingly waived protection of the bar against one-way intervention and had agreed to be bound by the adverse judgment as to all class members who did not opt out. That procedure was designed to allow plaintiff to proceed in the manner of a class action without triggering the problems associated with early class notification.[19]

Since *Katz* numerous courts have extended the exception beyond the purely consensual situation presented in *Katz* to include instances where defendants implicitly waive the protections of the rule against one-way intervention by attempting to obtain a favorable decision on the merits. Thus *Haas v. Pittsburgh National Bank*, 381 F.Supp. 801, 806 (W.D.Pa.1974), *rev'd in part on other grounds*, 526 F.2d 1083 (3d Cir.1975), held:

The defendants, by moving for summary judgment prior to the sending out of class notice, thereby assume the risk that a judgment in their favor will not protect them from subsequent suits by other potential class members, for only the slender reed of *stare decisis* stands between them and the prospective onrush of litigants. Certainly a judgment for the

---

17. In that respect, *Hudson* is no different from the already-discussed *Jimenez* case.

18. It is instructive to identify one group of potential plaintiffs who *would* be barred from taking advantage of this Court's earlier liability determination by parity of reasoning with the *real* teaching of *Hudson*. Because Opinion I declined to certify the class under Rule 23(b)(3), thereby excluding from the class all those who were *past* (but not present or future) protective custody prisoners (Opinion I at 385 & n. 2), a negative determination at the injunctive relief stage would not have bound such excluded pris-

oners. Accordingly, certification under Rule 23(b)(3) would not enable those prisoners to avail themselves of the finding of liability, because of the real opportunity for one-way intervention such an approach would afford them.

19. Plaintiff class members were holders of defendant's credit cards, and defendant was concerned that notice would cause those cardholders to withhold payments, thus complicating collection. Defendant hoped for a favorable judgment on the merits that would eliminate the need for notification.

plaintiff would subject them to unfortunate consequences as to the liability phase of the case, but, assuming that the judgment is correctly granted, this would seemingly not change their initial willingness to be bound. On the other hand, a correctly granted judgment for the defendant would protect both the parties and the court from needless and costly further litigation.

Similarly, *Postow v. OBA Federal Savings & Loan Association*, 627 F.2d 1370, 1382 (D.C.Cir.1980) (citing *Katz* and *Haas*) relied on the fact that defendant itself had moved for summary judgment before resolution of the class certification issue. Accordingly the court refused to vacate the Rule 23(b)(3) class certification and notice just because those steps had been delayed until after a ruling had been rendered on the merits. In addition, *Postow, id.* at 1383 suggested that the fact that the post-judgment notice that was subsequently sent to class members did not disclose that plaintiff had already obtained a favorable judgment was an additional "equitable reason[ ]" for deviating from the rule against one-way intervention.

In the context of the current case, the logic of the waiver (or implicit waiver) decisions is compelling. In effect, defendants have themselves attempted to obtain the kind of one-way relief that they profess to be so concerned about the absent class members getting. Instead of insisting on prejudgment notice, defendants sat on their hands [20] hoping to obtain a favorable judgment on the merits. Now that they have failed so abysmally, they attempt to deny this Court's ability to ground a damage award on that judgment. There is not the slightest doubt that defendants would have made no such protestations had the liability judgment come out differently.

In fact, a waiver-based approach has special force in this case. Not only were defendants fully aware that plaintiffs planned to seek monetary damages (see n. 4),[21] but they steadfastly resisted all efforts by the class representative to obtain a list of all potential members of the class.[22] To allow defendants to defeat the class members' damage claims on the ground

---

**20.** Maybe a more accurate metaphor would describe defendants as having put up their dukes rather than sitting on their hands—certainly every aspect of liability on the merits was fought hard (if not indeed bitterly) every step of the way.

**21.** It is true that Opinion I at 385 n. 2 placed the onus of moving for a possible Rule 23(b)(3) notice on plaintiff if past as well as present and future protective custody inmates were to be bound, but such a motion was unnecessary to bind the class as actually certified. Class counsel responded in early 1983 with a status report letter (Appendix 2 to this opinion) that put this Court—and, more importantly for current purposes, defendants—on notice that class counsel were not seeking to expand the class to embrace past protective custody inmates by a Rule 23(b)(3) certification motion *and specifically* that they planned to pursue damage claims for all members of the certified class if they prevailed on the merits in the injunction proceedings. Now of course no litigant can *change* the law by any such unilateral self-serving declaration. But that is not the point. What is critical on the issue of waiver is that defendants, in the face of that unequivocal statement of the class' understanding and intention, thereafter litigated the case on liability for years without ever suggesting any need for a Rule 23(b)(3) notice as they now belatedly urge.

**22.** Opinion II at 1381 n. 5 drew attention to defendants' intransigence (only one instance of their Stalingrad-defense approach to the entire litigation, a matter also commented on by the Court of Appeals in affirming this Court's decision on liability—see *Williams v. Lane*, 851 F.2d 867 at 884, 885 (7th Cir.1987); *id.* at 885–86 (J. Flaum concurring):

Plaintiffs' counsel advise defendants have failed to respond to repeated requests under the discovery Rules to produce an accurate and complete list of class members, with the length of time each has resided in protective custody.

In this respect it bears repeating that the Supreme Court's due process holding in *Phillips Petroleum*—the requirement of notice and an opportunity to opt out before a class member asserting a money claim may be bound by the class adjudication—was circumscribed in this manner (472 U.S. at 811 n. 3, 105 S.Ct. at 2974 n. 3 (emphasis added)):

Our holding today is limited to those class actions which seek to bind *known* plaintiffs concerning claims wholly or predominately for money judgments.

Where defendants have themselves been the roadblock to identifying the "known" members of the class, as is true here, they can scarcely urge the absence of class notice as an essential link in their one-way intervention argument.

they now advance would make a mockery of the tortuous proceedings in this case over the past nine years.

Accordingly defendants' first line of defense against a class-based group of damages claims has been demolished on more than one ground. That leaves only a brief mopping-up operation, directed to defendants' challenge to a May 31, 1989 class closing—the date that Special Master Morris found defendants had substantially complied with this Court's remedial order. Instead defendants offer two alternative dates for class closing:

1. October 31, 1986, the date on which this Court issued Opinion II with its findings that defendants had violated the constitutional rights of members of plaintiff class; or

2. February 10, 1986, the date on which the trial ended.

Neither of those proffered dates makes sense.

In support of their October 31, 1986 date, defendants once again fall back on their one-way intervention concept. This time they argue that allowing the class to remain open past the date on which liability had been found would give an "unfair advantage" to persons who entered protective custody after judgment of liability because, they claim, such inmates were not members of the certified Rule 23(b)(2) class and would not have been bound by a judgment unfavorable to it. Hence, they say, any inclusion of those after-admitted inmates in the damage class would unfairly enable them to take advantage of this Court's liability determination without having risked an unfavorable ruling.

That contention betrays a fundamental misunderstanding of actions involving open-ended and fluid plaintiff classes. Contrary to defendants' claim, this Court's original certification of the class to include all inmates "now or ... hereafter" in protective custody sweeps within it even inmates admitted into that status after the October 21, 1986 determination, because that latter determination was not a final judgment. Until entry of final judgment the class continues to grow as new inmates are admitted to protective custody, with all prior rulings becoming binding upon defendants vis-a-vis all new class members. Binding those additional members to this Court's earlier rulings (including, it will be recalled, the respect in which Opinion II ruled *against* the plaintiff class on the merits (see n. 12)) presents no potential for unfairness to them because, like the unnamed members in protective custody before October 21, 1986, they too share the same interest in injunctive relief and are fully protected (and fully bound) by this Court's finding of adequate representation by the named representatives.[23] Once more defendants' fears of one-way intervention are unfounded.

Defendants' second suggestion for a class closing date—February 10, 1986—is nothing less than ludicrous. They cite no authority and make no logical argument as to why the date on which the trial ended should have any bearing whatsoever on the inclusion of addition inmates in the class. Their theory (D.Mem. 14 n. 14) is based on what they label "the simple fact" that:

the record on which the Court based its judgment necessarily excluded evidence concerning persons entering protective custody after the trial ended.

If defendants' use of the word "necessarily" is intended to imply that this Court could not, on motion from a party, have reopened the record to evidence of unconstitutional treatment of inmates admitted after February 10, 1986, they are simply mistaken. Because the close of trial—indeed the judgment of liability (see n. 23)—

---

**23.** In addition, under Rule 54(b) every determination that adjudicates fewer than all the claims asserted—and here damages have yet to be adjudicated—remains "subject to revision at any time" before the entry of final judgment. If, for example, the circumstances surrounding the incarceration of any of these new inmates had shed new light on any of the issues on which this Court had failed to find a constitutional violation, this Court could have revised Opinion II's findings and ordered relief in its own discretion. Defendants' untenable notion that the later inmates were not members of the class would have required them to file a separate action for the kind of relief clearly contemplated by Rule 54(b).

did not in the least affect this Court's power to revisit issues there decided, one-way intervention is again not an issue.

That leaves plaintiffs' suggested May 31, 1989 date. Despite defendants' attempts to question plaintiffs' interpretation of such cases as *Langley v. Coughlin*, 715 F.Supp. 522 (S.D.N.Y.1989) and *Smith v. Montgomery County*, 117 F.R.D. 372 (D.Md.1987), this Court finds plaintiffs' reading of those cases more plausible than defendants' and finds the logic of plaintiffs' reading compelling in the current situation.

In *Langley*, after the claims for injunctive relief of a Rule 23(b)(2) class had been settled by the parties (after "[t]he injunction hearing apparently served as a catalyst" to that end, *id.* at 532), the district court recertified the class under Rule 23(b)(3) to allow the pursuit of the class members' damages claims. Adopting the magistrate's report (*id.* at 554), the court ruled that the class had closed on the date on which the injunctive relief claims had settled (rejecting defendants' argument that the closing date should have been the day on which the Complaint was filed):

> Plaintiffs alleged in their pleadings that the assertedly unconstitutional conduct was continuing and would continue indefinitely into the future unless enjoined. Thus their pleadings adequately apprised defendants that the events in question were not deemed to terminate with the filing of the lawsuit.... Furthermore, plaintiffs offer evidence reflecting the continuing nature of the alleged misconduct at least up to the date of approval of the settlement, which was August 20, 1987.

To the same effect, *Smith* ruled that a Rule 23(b)(3) damages class, certified after a preliminary injunction had first been issued against defendant prison's strip search policy and then later dissolved, was to be closed on the date the injunction issued. There the court found that, irrespective of the injunction itself having been dissolved, defendants had revised their policy and were presumably in compliance with

their constitutional obligations (117 F.R.D. at 378):

> The class ... covers all persons subjected to MCDC's "indiscriminate" strip search policy adopted May 20, 1979. In the absence of evidence to the contrary, and in light of reassurances of compliance by defendant Montgomery County and its officials, discussed above, the Court will presume for purposes of class definition that the May 20, 1979 policy was discontinued upon issuance of the prelimination [sic] injunction and has been replaced by a policy complying with the Court's standards.

This case differs from both of those in one vital respect: Here the constitutional violations unquestionably did *not* cease on the date this Court entered its injunction. In that respect it is necessary to refer only to the record of defendants' egregious continuing intransigence uncovered by Special Master Morris. Defendants' argument that *Hudson* and *Smith* stand for the proposition that the date on which the court first enjoins the unconstitutional activity is the date on which the class must close is wholly without merit.

### Damage Period

■ Plaintiffs finally seek to have the period for which individuals in the damage class may recover damages extend from May 1, 1979 (the date on which Opinion I found that the constitutional violations at issue began) to May 31, 1989 (the already-approved date on which Special Master Morris determined that those violations had ceased). Defendants contest the onset date, arguing instead that damages should be available only for violations occurring after the filing of the Complaint. They argue that because Rule 23(b)(2) looks only to injunctive relief (which is necessarily prospective), retrospective relief covering the period antedating commencement of the class period is unavailable absent recertification under Rule 23(b)(3).

That final contention fails because Rule 23(b)(2) in no way limits the availability of damages for members of classes properly

certified under that provision. As *Probe,* 780 F.2d at 780 said:

> Although plaintiffs request money damages in this suit, such a claim is merely incidental to their primary claim for injunctive relief to prohibit the use of sex-based mortality tables. Thus, plaintiffs' request for money damages does not prevent class certification under Rule 23(b)(2).

Rule 23(b)(2) may keep an individual from joining a class if that individual is not primarily seeking prospective relief—as indeed it excluded any persons who were inmates in the protective custody unit after the constitutional violations began on May 1, 1979 but were released before the filing of the Complaint. But once an individual is properly within the class, Rule 23(b)(2) has nothing to say about what kind of damages that individual may recover incident to his primary claim for injunctive relief. That, as plaintiffs rightly argue, is determined solely by the injury incurred and by the applicable statute of limitations.

█ In this instance the applicable statute of limitations is that in effect for Section 1983 actions in Illinois at the time the Complaint was filed (January 30, 1981).[24] Then the limitations period was five years under *Beard v. Robinson,* 563 F.2d 331, 336 (7th Cir.1977) and its progeny. Because that period in all events embraces the earliest adjudicated constitutional violations beginning May 1, 1979, that date will serve as the first day of the damages period.

## Conclusion

This Court has determined that:

1. Those plaintiffs eligible to recover damages in this action (the "Damages Class") comprise all persons who were designated under Administrative Regulation 808 for residence in a Protective Custody Unit at Stateville Correctional Center between the stipulated date of April 30, 1982 and May 31, 1989.

2. Each member of the Damages Class may recover all damages sustained as a result of violations by defendants of that member's constitutional rights that occurred between May 1, 1979 and May 31, 1989.

Defendants are ordered to supply plaintiffs' counsel with an accurate list of all persons included in the Damages Class on or before February 13, 1990. This case is set for a status hearing at 9 a.m. February 20, 1990.

## APPENDIX 1

All too often the quality (or lack of quality) of briefing by counsel in a case forces this Court to place its primary reliance for the uncovering of the relevant authorities—the grist for the mill of this Court's opinions—on its law clerks, who have invariably been of the highest quality and therefore pose no such problems. In this instance:

1. Appointed counsel for the plaintiff class, whose work on the merits throughout this litigation has been impeccable in both scope and substance, have not at all approached that level on the current issues. Their two briefs, occupying a total of just 12 pages, are sketchy at best in adducing just a few authorities—though it is true that class counsel do urge the correct *result* on every facet of the current dispute.

2. Defendants' counsel, although their memorandum is far more thorough in directing this Court's attention to some of the potentially relevant case law, are consistently wrong in the conclusions that they say should flow from those authorities. That too has forced a search well beyond what counsel have submitted.

---

**24.** P.Mem. 7 says the applicable statute of limitations is that in effect at the time of filing of the Amended Complaint. However, as this Court recently ruled in *Doe v. Calumet City,* 128 F.R.D. 93, 96 (N.D.Ill.1989) (on reconsideration), where the original individual complaint carried the seeds of a class-based claim, the relation-back concept of Rule 15(c) applies in determining the beginning of the damage period. In this case there is no need to decide whether the proper referent is the date when Williams filed his original complaint or the date of the Amended Complaint, because as to each of them the limitations period is five years—and the earliest date on which a constitutional violation has been found (May 1, 1979) is within that five-year period in all events.

3. Despite (or in an odd sense because of) the fact that this Court has long since ruled so extensively on the merits of liability—rulings also upheld by our Court of Appeals, *Williams v. Lane*, 851 F.2d 867 (7th Cir.1988)—the decisions reached on the current questions are of enormous importance to the members of the plaintiff class.

For all those reasons this Court is especially indebted to its clerk Michael Faris, who is responsible for having uncovered a great many of the authorities cited here and for having identified their potential applicability to the issues dealt with in this opinion. As this Court is always careful to point out in referring to its law clerks' input, however, the ultimate responsibility of course remains that of this Court: It reads every case filed in any of its opinions, and it reworks every sentence of its clerks' suggested draft opinions. Hence the just-completed end product, and any error that may have crept into that end product, are necessarily ascribable to this Court and not to its law clerk.