Selma S. BUYCKS–ROBERSON; Calvin R. Roberson; and Rene Brooks, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CITIBANK FEDERAL SAVINGS BANK, Defendant.

No. 94 C 4094.

United States District Court, N.D. Illinois, Eastern Division.

June 29, 1995.

Jeffrey Irvine Cummings, Judson H. Miner, Barack H. Obama, Davis, Miner, Barnhill and Galland, P.C., Fay Clayton, Hilary I. Alexis, Robinson, Curley & Clayton, P.C., Michael Allen Childers, Chicago, IL, for plaintiffs Selma S. Buycks–Roberson, on her behalf and others similarly situated, Calvin

R. Roberson, Renee Brooks, on behalf of themselves and others similarly situated.

Robert J. Kriss, Alan Norris Salpeter, Mary Ann Spiegel, Mayer, Brown & Platt, Chicago, IL, for defendant Citibank Federal Sav. Bank.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiffs Selma S. Buycks–Roberson, Calvin R. Roberson and Rene Brooks ("Plaintiffs") are African–American and sue defendant Citibank Federal Savings Bank ("Citibank") seeking redress for alleged racial discrimination and discriminatory redlining[1] practices in connection with Citibank's home loan application approval process. Count I of the complaint alleges that Citibank intentionally discriminated against the Plaintiffs on the basis of race with respect to a credit transaction in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* Count II alleges that Citibank, whose business includes engaging in transactions related to residential real estate, discriminated against the Plaintiffs on the basis of race or color in violation of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* Count III alleges that Citibank's discriminatory acts violate the Thirteenth Amendment and invokes 42 U.S.C. § 1981, which secures the right of plaintiffs to make and enforce contracts on the same basis as Caucasian[2] citizens, and 42 U.S.C. § 1982, which secures the right of plaintiffs to inherit, purchase, lease, sell, hold and convey real and personal property on the same basis as white citizens. Plaintiffs seek injunctive relief, actual damages and punitive damages with respect to all three counts.

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs move for class certification on all counts. Specifically, Plaintiffs propose that the class be defined as all African–

---

1. Redlining has been defined as "mortgage credit discrimination based on the characteristics of the neighborhood surrounding the would-be borrower's dwelling." *Thomas v. First Fed. Sav. Bank of Ind.*, 653 F.Supp. 1330, 1337 (N.D.Ind.1987). *See also NAACP v. AFMI Co.*, 978 F.2d 287, 290 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993); *Cartwright v. American Savs. Ass'n,* 880 F.2d 912, 922 (7th Cir.1989).

2. Plaintiffs define the Caucasian race to include persons of European and Asian descent. The sole Hispanic applicant in the relevant statistical group has been excluded from Plaintiffs' proposed class. *See* Plaintiffs' Memorandum In Support Of Their Third Motion To Compel Discovery at 9 n. 5.

Americans who filed home loan applications with Citibank on or after July 6, 1992,[3] and whose applications were rejected on the basis of race, color or the racial composition of the neighborhood in which their properties were located. *See* Amended Compl. ¶ 8(b).

## BACKGROUND [4]

### Selma S. Buycks–Roberson [5]

On approximately April 4, 1992, Selma Buycks–Roberson applied for a home loan of approximately $43,700 from Citibank. Compl. ¶ 9. Ms. Buycks–Roberson wished to use the loan to refinance an existing mortgage of approximately $43,500 on her home, located at 2057 South 25th Avenue in Broadview, Illinois. Compl. ¶ 10. The property that Ms. Buycks–Roberson attempted to refinance is located in a neighborhood in which the African–American representation is growing and currently constitutes over fifty percent of that neighborhood's population. Compl. ¶ 11.

In conjunction with her application, Ms. Buycks–Roberson provided to Citibank extensive documentation concerning the property and her financial status, including documents showing annual income of over $47,-000. Compl. ¶ 12. On approximately April 28, 1992, Ms. Buycks–Roberson received from Citibank a letter informing her that her mortgage loan application had been denied because of delinquent credit obligations and other adverse credit history. Compl. ¶ 13. On June 19, 1992, Ms. Buycks–Roberson reapplied for the home loan, and again provided to Citibank extensive documentation concerning her annual income, financial status and information concerning her credit worthiness. Compl. ¶ 14. On or after July 10, 1992, Ms. Buycks–Roberson received from Citibank a letter informing her that Citibank had denied her mortgage loan application because her "income [did] not support the amount of credit requested." Compl. ¶ 15. Ms. Buycks–Roberson alleges that she was qualified to receive the loan she sought from Citibank. Compl. ¶ 16.

### Calvin R. Roberson [6]

On approximately July 9, 1993, Calvin Roberson applied for a home loan of approximately $43,000 from Citibank. Mr. Rober-

---

3. The statutes of limitation for all three counts require a plaintiff to file his or her action no later than two years from the date of the occurrence of the violation. *See* 15 U.S.C. § 1691e(f) (Count I); 42 U.S.C. § 3613(a)(1)(A) (Count II); 42 U.S.C. § 1983 (Count III) §§ 1981 and 1982 claims must satisfy the two-year Illinois statute of limitations applicable to a "tort action for the recovery of damages for personal injuries." *See Wilson v. Garcia*, 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985); *Kalimara v. Illinois Dep't of Corrections*, 879 F.2d 276, 276–77 (7th Cir. 1989); *Lewellen v. Morley*, 875 F.2d 118, 119 (7th Cir.1989). Plaintiffs propose that the class consist of all African–Americans whose home loan applications were *filed* within two years of the date on which the original complaint was filed, *i.e.*, July 6, 1994. Compl. ¶ 8(b). The Court notes that any alleged violations of the above statutes would not occur until Citibank actually *rejected* an application. Plaintiffs are given leave to file an amended complaint redefining the class as all African–Americans whose home loan applications were *rejected* on or after July 6, 1992.

4. When evaluating a motion for class certification, the Court accepts all well-pleaded facts as true. *See Hardin v. Harshbarger*, 814 F.Supp. 703, 706 (N.D.Ill.1993) ("the allegations made in support of certification are taken as true"); *Allen v. City of Chicago*, 828 F.Supp. 543, 550 (N.D.Ill.

1993) (same). Accordingly, the following recitation of background facts is derived from the allegations of the complaint and, where appropriate, facts alleged in Plaintiffs' memorandum and reply in support of class certification.

5. At the time her loan application was denied, Plaintiff Buycks–Roberson lived in Kenwood, a predominantly African–American neighborhood. Citibank cites statistics indicating that "Kenwood's racial composition at [the time Buycks–Roberson's application was rejected] was 76% African–American, 20% White and 4% other." Citibank's Suppl.Mem. at 10 (citing 1992 Woodstock Institute Report). Brooks therefore represents a class of persons who are both African–American and who lived in predominantly African–American neighborhoods at the time Citibank rejected their loan applications.

6. At the time his application was denied, Calvin Roberson lived in Ashburn, a predominantly White neighborhood. Citibank cites statistics indicating that "[t]he racial composition of that neighborhood ... was 10% African–American, 83% White and 7% other." Citibank's Suppl. Mem. at 12. Roberson therefore can represent only a class of plaintiffs consisting of African–Americans who were denied home loans during the class period, not class members who were African–American and lived in predominantly African–American neighborhoods.

son wished to use the loan to refinance an existing mortgage of approximately $43,000 on his home, located at 2847 West 85th Street in Chicago, Illinois. Compl. ¶ 18. The property that Mr. Roberson attempted to refinance is located in a neighborhood where the African–American representation is growing. Compl. ¶ 19. Mr. Roberson provided Citibank with all requested documentation, including documents showing an annual income of approximately $69,000 from his management position at AT & T and the equity in his home valued at approximately $75,000. Mr. Roberson also provided documentation showing additional liquid assets well in excess of the amount of the loan requested. Mr. Roberson's income was more than sufficient to enable him to meet his credit obligations. Compl. ¶ 20. On approximately July 9, 1993, Mr. Roberson received a letter from Citibank denying his application for refinancing on grounds that it was "incomplete" and Citibank did not "make this type of loan." Compl. ¶ 21. Mr. Roberson alleges that he was qualified to receive the loan he sought from Citibank. Compl. ¶ 22.

### Rene Brooks[7]

On approximately November 25, 1993, Rene Brooks applied for a home loan of approximately $95,000 from Citibank. Compl. ¶ 23. Ms. Brooks wished to use the loan to refinance an existing mortgage of approximately $95,000 on her condominium, located at 5000 South Cornell Street in Chicago, Illinois. The property that Ms. Brooks attempted to refinance is located in a neighborhood with a significant African–American population. Compl. ¶ 26. Ms. Brooks provided Citibank with all required documentation. Compl. ¶ 24. On approximately March 8, 1994, Citibank denied Ms. Brooks' application for a home loan on the grounds that she had inadequate collateral and that she had submitted an incomplete application. Compl. ¶ 27. Ms. Brooks alleges that she was qualified to receive the home loan she sought from Citibank. Compl. ¶ 28.

### Statistics

The Home Mortgage Disclosure Act ("HMDA") data[8] provided by both parties indicates that in 1992 and 1993, the percentage of loan applications approved by Citibank was far lower in areas where the racial composition of the neighborhood was predominantly African–American than it was in areas where the composition of the neighborhood was predominantly White. In 1992, for example, Citibank denied refinancing loans to only 19% of upper-income applicants living in areas with less than 10% minority populations. In that same year and income bracket, Citibank denied refinancing loans to 42% of the applicants in areas with an 80–100% minority population. Pls.Reply, Ex. F. Plaintiffs allege that this data "strongly suggest(s) that African–American home loan applicants and applicants from largely African–American neighborhoods are discriminated against by Citibank in significantly large numbers even though some African–Americans receive loans." Pls. Reply at 9. Plaintiffs also claim that these statistics demonstrate that Citibank had a policy of rejecting home loan applications on the basis of the applicants' race, color or the racial composition of the neighborhood in which their properties were located.

Plaintiffs also assert that the 1992 and 1993 Loan Application Registers for Citibank in Illinois show that over 780 African–Americans were denied home loans in the State of Illinois alone between 1992 and 1993, and that this fact supports Plaintiffs' claim that

---

7. At the time her application was denied, Rene Brooks lived in Kenwood, a predominantly African–American neighborhood. Citibank cites statistics indicating that "Kenwood's racial composition at [the time Brook's application was rejected] was 76% African–American, 20% White and 4% other." Citibank's Suppl.Mem. at 10 (citing 1992 Woodstock Institute Report). Brooks therefore represents a class of persons who are both African–American and who lived in predominantly African–American neighborhoods at the time Citibank rejected their loan applications.

8. Home Mortgage Disclosure Act data is required to be submitted by lending institutions to the Federal Financial Institutions Examination Council. Plaintiffs' theory is that the HMDA data show that "as the percentage of minorities in an area increases, the percentage of loans approved decreases, regardless of income." *See* HMDA Table 7–3 and accompanying percentage table, Ex. L to Plaintiffs' Memorandum In Support of Their Third Motion to Compel Discovery at 13 n. 9 and accompanying text.

Citibank has exhibited a pattern of discrimination based on race.

## ANALYSIS

■ The party seeking class certification bears the burden of establishing that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir.1993); *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir.1984). After careful review, the Court concludes that Plaintiffs have carried their burden.

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, a plaintiff must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality and adequacy of representation." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir.1993) (internal quotation marks omitted). "All of these elements are prerequisites to certification; failure to meet any one of them precludes certification as a class." *Retired Chicago Police Ass'n*, 7 F.3d at 596; *Harriston*, 992 F.2d at 703. Second, the action must satisfy one of the three subsections of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977).

Plaintiffs in this case seek certification under either Rule 23(b)(2) or Rule 23(b)(3). Where a class can be certified under either Rule 23(b)(2) or 23(b)(3), courts have generally held certification under Rule 23(b)(2) to be preferable. *See* H. NEWBERG, CLASS' ACTIONS § 4.20 (1992) and cases cited therein. Because the Court finds that this action falls squarely within the reach of Rule 23(b)(2), which provides for certification if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole," FED. R.CIV.P. 23(b)(2), this Opinion addresses only the requirements for certification under Rule 23(b)(2).

Plaintiffs maintain that all of the requirements of Rule 23(a) and (b)(2) are met. Citibank does not dispute the appropriateness of Rule 23(b)(2) to the facts of the instant case, but contends that the plaintiffs fail to satisfy any of Rule 23(a)'s prerequisites.

### A. Rule 23(a)

■ As a threshold matter, Citibank contends that Plaintiffs have failed to identify a class with sufficient "definiteness." Definiteness of the proposed class is an implicit requirement of Rule 23(a). *See Alliance to End Repression*, 565 F.2d at 977; *Gomez v. Illinois State Bd. of Educ.*, 117 F.R.D. 394, 397 (N.D.Ill.1987). With respect to this requirement, the Seventh Circuit has stated that the scope of a class may be defined by reference to the defendants' conduct. *Alliance to End Repression*, 565 F.2d at 978. Citibank argues that Plaintiffs have offered "no definition of a class beyond all blacks who applied but did not obtain loans from Citibank," and "rejection alone does not indicate discrimination," because "[t]housands of white applicants also have been rejected." Def.'s Opp.Mem. at 1.

■ In the instant case, the Court disagrees with Citibank that the plaintiffs' proposed class is insufficiently definite. The class has been defined to include only African–Americans whose applications for home mortgage loans were rejected by Citibank on or after July 6, 1992, or who lived in predominantly minority neighborhoods at the time their applications were denied. As defined, the class definition properly focuses on defendant's conduct with respect to the denial rate of African–American home loan applicants, in general, and African–Americans living in African–American neighborhoods, in particular. The definiteness threshold requirement is therefore met. *See Alliance to End Repression*, 565 F.2d at 977; *Gomez*, 117 F.R.D. at 397.

■ Courts retain broad power to modify the definition of a proposed class. *See, e.g., Metropolitan Area Hous. Alliance v. United States Dep't of Hous. & Urban Dev.*, 69 F.R.D. 633 (N.D.Ill.1976) (citing *Metcalf v. Edelman*, 64 F.R.D. 407, 409 (N.D.Ill.1974)) ("[a] court may modify the proposed definition of a class if it believes the definition is inadequate"); *see also* C.A. WRIGHT, et al., FEDERAL PRACTICE & PROCEDURE § 1760 at 127–28 (2d ed. 1986). This Court retains the

power to modify the class definition at any time before a final judgment on the merits, if the evidence or the legal principles governing this case establishes that the class definition is too broad. FED.R.CIV.P. 23(c)(1). We now address the explicit requirements of Rule 23(a).

### 1. Numerosity

▮▮▮ Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). In making this determination, "the court is entitled to make common sense assumptions." *Patrykus v. Gomilla,* 121 F.R.D. 357, 360 (N.D.Ill.1988). *See also In re VMS Sec. Litig.,* 136 F.R.D. 466, 473 (N.D.Ill.1991). Additionally, although "the one who asserts the class must show some evidence or reasonable estimate of the number of class members[,] if a plaintiff cannot provide precise numbers, "a good faith estimate is sufficient [to satisfy the numerosity requirement] where it is difficult to assess the exact class membership." *Long v. Thornton Township High Sch. Dist.* 205, 82 F.R.D. 186, 189 (N.D.Ill.1979).

▮▮ Plaintiffs allege that Citibank denied home loans to over 780 African–Americans between 1992 and 1993. The HMDA data also suggest that a substantial percentage of these African–American applicants sought home loans for properties located in predominantly African–American neighborhoods. Plaintiffs have cited cases in which classes were certified with fewer than 780 members. *See Concerned Tenants Ass'n of Indian Trails Apartments v. Indian Trails Apartments,* 496 F.Supp. 522 (N.D.Ill.1980) (certifying a class consisting of 360 tenants and their families in a housing discrimination case); *Edmondson v. Simon,* 86 F.R.D. 375 (N.D.Ill.1980) (certifying a class consisting of 170 members); *Riordan v. Smith Barney,* 113 F.R.D. 60 (N.D.Ill.1986) (certifying a class consisting of 29 plaintiffs); *Contract Buyers League v. F & F Inv.,* 48 F.R.D. 7 (N.D.Ill.1969) (certifying a class consisting of 50 African–American home buyers). Thus, even if the number of class members in this case were less than half that alleged by the Plaintiffs, the case law cited above indicates that class certification is appropriate. Given

that a "good faith estimate" is sufficient to satisfy Rule 23(a)(1), this Court finds that the numerosity requirement has been met.

### 2. Commonality

▮▮ Rule 23(a)(2) requires the presence of questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement," *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) (citing *Franklin v. City of Chicago,* 102 F.R.D. 944, 949–50 (N.D.Ill.1984)), and "some factual variation among the class grievances will not defeat a class action." *Rosario,* 963 F.2d at 1017. Indeed, as noted in *Gomez:*

> "[t]here need only be a single issue [of law or fact] common to all members of the class," (*Edmondson v. Simon,* 86 F.R.D. 375, 380 (N.D.Ill.1980)), and differences in individual class members' cases concerning damages or treatments will not defeat commonality. *Tonya K. v. Chicago Board of Education,* 551 F.Supp. 1107, 1110 (N.D.Ill.1982). "Especially in the context of Rule 23(b)(2) class actions, distinct factual contexts will be unified under a common claim for equitable relief." *Cristiano v. Courts of Justices of the Peace,* 115 F.R.D. 240, 247–48 (D.Del.1987).

117 F.R.D. at 399.

▮▮ The parties' arguments on the issue of commonality are as follows. Plaintiffs assert that the common issues of law and fact in this case are: (1) whether Citibank employed policies or engaged in practices or procedures which resulted in the denial of African–Americans' home loan applications on the basis of the applicant's race; and (2) whether Citibank personnel practiced redlining by applying its underwriting criteria in a subjective manner which resulted in the denial of home loans to African–Americans in predominantly African–American communities. Pls.Mem. at 6; Pls.Reply at 5 (citing Citibank's policy manual as Ex. A).

Citibank contends that the Plaintiffs have not challenged any particular underwriting

criteria that applies generally to any class.[9] According to Citibank, without such a claim, this case cannot be certified for class treatment, because each class member's case "will turn on the facts specific to the applicant's financial condition and credit history." Def.'s Opp.Mem.Intro. "Individual instances of alleged discrimination cannot simply be combined with the common characteristic of race to create a certifiable class." Def.'s Opp. Mem. at 2. Rather, "to demonstrate commonality and typicality, the plaintiffs in this case must show a particular policy affecting all members of a class in the same way." Def.'s Opp.Mem. at 3 (citing *Falcon*, 457 U.S. at 157, 102 S.Ct. at 2370).

The following analysis resolves the problems Citibank raises. Plaintiffs' pivotal allegation is that Citibank gives its loan originators considerable discretion when making loan decisions, such that they may "request additional information from applicants to explain potentially adverse information contained in their credit history profiles before a decision ... to approve their loan is made," or they may identify certain applicants as "desirable customers" who are then given "preferential treatment." *See* Pls.Reply at 5. Although these allegations do not prove race discrimination, they are sufficient to raise an issue as to whether Citibank used its discretion to apply the otherwise neutral underwriting criteria in a way which resulted in the denial of home loans to African–Americans based on their race or the racial composition of their neighborhoods. Certainly, where the subjective decisions of Citibank employees allow Citibank to systematically discriminate on the basis of race or the racial composition of the applicant's neighborhood when choosing among minimally qualified applicants, common issues of law and fact exist regardless of individual differences. *See Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C.Cir.1994). For the reasons discussed below, the Court finds that this allegation of "subjective decisionmaking" is sufficient to satisfy the commonality requirement of Rule 23(a)(2) and the dictates of *General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

We begin by addressing Citibank's arguments against certification. Citibank's primary contention is that individual issues regarding the class members' financial qualifications for the home loans will defeat certification. The question of individual issues does not defeat commonality, as demonstrated below; moreover, these issues are more properly the focus of the Court's Rule 23(b)(2) analysis and thus will not be discussed in depth here.

Citibank's alternative argument is that Plaintiffs have failed to identify a particular policy or practice "generally applicable" to the class which will unify the individual and class claims under a common theory. Having failed to identify such a practice, Citibank claims that Plaintiffs' only common nexus is their race; and race alone is not sufficient to establish commonality. *See Falcon*, 457 U.S. at 159, 162, 102 S.Ct. at 2371, 2373. *See also Hartman v. Duffey*, 19 F.3d 1459 (D.C.Cir. 1994) ("[a]s *Falcon* made clear, there is more to a showing of commonality than a demonstration that class plaintiffs suffered discrimination on the basis of membership in a particular group."). To support their "policy and practice" argument, Citibank has cited several cases where class certification was denied based on a plaintiff's failure to identify a "standardized" practice generally applicable to the class. *See Washington v. Brown*, 959 F.2d 1566, 1570 (11th Cir.1992) (class certification denied where African–American plaintiffs failed to identify a specific employment practice); *Coon v. Georgia Pac. Corp.*, 829 F.2d 1563, 1566–67 (11th Cir.1987) (class certification denied where female plaintiffs failed to identify a common injury); *Allen v. City of Chicago*, 828 F.Supp. 543, 552–553 (N.D.Ill.1993) (class certification denied where African–American and Hispanic plaintiffs failed to allege a discriminatory "standardized employment practice" generally applicable to the class). The common theme in these cases is that a plaintiff seeking class certification must allege a "nexus" or a "unifying force" other than race

---

**9.** According to Citibank, its "lending decisions were, and are, the result of a highly individual-ized, case-by-case underwriting process." *See* Citibank's Suppl.Mem. at 2.

between the class representatives and the proposed members of the class.

The unifying force between the named representatives' claims and those of the proposed class is the allegation that Citibank subjectively applied its neutral underwriting criteria in a way which resulted in the denial of home loans to African–American applicants on the basis of race or the racial composition of the neighborhoods in which the applicants lived. Plaintiffs' failure to "challenge any particular underwriting criteria that applies generally to the class" is not relevant, since the alleged "policy or practice" at issue is Citibank's subjective application of these criteria, not the particular types of underwriting criteria, alone. This "subjective decisionmaking" (outlined in the policy manual attached as Ex. A to Pls.Reply) is the practice which is "generally applicable" to the class.

This allegation of subjectivity raises a question of law and fact common to this class because it "refers to standardized conduct" by Citibank towards the class members, *see Allen*, 828 F.Supp. at 551. The subjective application of neutral underwriting criteria is standardized conduct because the loan originators have the opportunity to use their discretion with respect to each loan applicant.

Moreover, this standardized conduct can be readily identified for purposes of assessing evidence of disparate impact. *See generally Perez v. FBI*, 707 F.Supp. 891 (W.D.Tex. 1988) (class of Hispanic FBI agents challenging race-discrimination in violation of Title VII were certified by alleging the subjective application of neutral employment practices had disparate impact). Where a defendant's allegedly standardized conduct is at issue, "differences in individual cases regarding treatment or damages does not defeat commonality." *Allen*, 828 F.Supp. at 551 (citing cases); *Hartman*, 19 F.3d at 1471 ("given sufficient proof, an unsuccessful applicant for one job can presumably challenge discriminatory hiring for different job categories where the primary practices used to discriminate in the different categories are themselves similar"). Thus, although the particular underwriting criteria applied to each class representative in this case may be distinct,[10] the relevant conduct at issue is Citibank's allegedly subjective[11] application of facially neutral underwriting criteria, in general, to the class members certified by this Court.

The Supreme Court's decision in *General Tel. Co. v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), is instructive.[12]

10. In opposition to a related motion to compel discovery, Citibank argued that "[i]n the case of plaintiff Buycks–Roberson, the focus of the litigation will be whether Citibank applied its debt-to-income criteria in a racially discriminatory fashion.... As to Brooks, the issue will be whether Citibank applied its collateral criteria in a racially discriminatory fashion.... As to Roberson, the issue will be whether Citibank applied its subordinate financing criteria in a racially discriminatory fashion." *See* Citibank's Response To Plaintiffs' Third Motion To Compel Discovery at 2.

11. In this Opinion, the Court's use of the term "subjective" means that Citibank's employees were given considerable discretion to apply distinct types of underwriting criteria to individual applicants.

12. The Court has not found a case directly on point from the Seventh Circuit or the district courts within this Circuit. We have found several Seventh Circuit cases that involved certified classes that alleged racial redlining practices against defendants other than lending institutions. These cases provide tangential support for certification in this case. *See generally NAACP v. AFMI Co.*, 978 F.2d 287 (7th Cir.1992), *cert.*

denied, —— U.S. ——, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993) (class challenged insurance company's practice of denying coverage to applicants applying for home mortgage loans when the applicant wished to live in redline areas with large or growing numbers of minority residents); *Southend Neighborhood Improvement Ass'n. v. County of St. Clair*, 743 F.2d 1207 (7th Cir.1984) (class challenged county policies regarding tax-delinquent properties that allegedly discriminated against African–Americans in violation of the Fair Housing Act, various civil rights statutes and the Thirteenth Amendment). *Cf. Cartwright v. American Savings Ass'n*, 880 F.2d 912 (7th Cir.1989) (non-certified minority plaintiffs brought redlining challenge against lending institution but lost because she had not provided bank with necessary information to qualify for loan). The Seventh Circuit has also allowed class actions to proceed where the allegations involved race discrimination in the context of home-loan guarantee programs, *see Jorman v. Veterans Admin.*, 830 F.2d 1420 (7th Cir.1987), and land installment contracts where the plaintiffs alleged that land owners sold homes to African–American buyers at higher prices and on less favorable terms than were available to similarly situated White buyers in violation of their

In *Falcon,* a Mexican–American plaintiff alleged that his employer refused to promote him because of his race. This plaintiff then sought to certify a class of persons who were also Mexican–American and had not been hired or promoted by the defendant. *Falcon,* 457 U.S. at 149–50, 102 S.Ct. at 2366–67. The Supreme Court held that a class representative must allege more than adverse treatment based on race discrimination; rather, the representative must additionally identify a discriminatory policy or practice by the defendant which is "generally applicable" to the proposed class members. *Id.* at 159 n. 15, 102 S.Ct. at 2371 n. 15. In other words, the Court must focus on the defendant's standard conduct toward the minority plaintiffs and determine whether that allegedly discriminatory conduct caused a common injury "typical of the class claims." *Falcon,* 457 U.S. at 157, 102 S.Ct. at 2370.

As stated by the Court:

Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class ... if the discrimination manifested itself ... in the same general fashion, such as through entirely subjective decisionmaking processes.

*Id.* at 159 n. 15, 102 S.Ct. at 2371 n. 15. Thus, a specific policy of discrimination or a "general policy" of "general application" such as a "biased testing procedure" will satisfy the commonality and typicality requirements of Rule 23. *Id.*

Like biased testing procedures, the subjective application of otherwise neutral underwriting criteria can lead to discrimination, even if several types of criteria are applied to individual applicants. *See e.g., Allen v. Isaac,* 99 F.R.D. 45, 54 (N.D.Ill.1983) (Hart, J.) (class certified in disparate impact case involving race discrimination where primary allegation was that defendant's test for promotion was applied by decisionmaker vested with great discretion); *Lawson v. Metropolitan Sanitary Dist. of Greater Chicago,* 102 F.R.D. 783, 785 (N.D.Ill.1983) (Getzendanner, J.) (certifying class of African–American plaintiffs challenging use of "promotion examinations that have a disparate impact on

civil rights. *See Clark v. Universal Builders, Inc.,* 706 F.2d 204 (7th Cir.1983) ("Clark II"); *Clark*

blacks ... [and] demoting blacks based on subjective and invalid performance standards"). In this case, like other disparate impact cases, Plaintiffs allege that discrimination takes place through the subjective application of facially neutral underwriting criteria which have an adverse impact on the protected group. The discriminatory policy or practice arises out of the subjectivity and discretion vested in the decisionmaker (the loan originator) and can be proved by use of expert testimony and statistical evidence showing "disparities rather than specific incidents of discrimination" between the relevant comparison groups. *See Perez,* 707 F.Supp. at 898–99.

The class representatives have alleged that a class of persons have suffered the same injury from Citibank which they have suffered, namely, the denial of home loans based on race discrimination. Plaintiffs also allege that home loans were denied to African–Americans by means of "subjective decisionmaking" practices related to the application of facially neutral underwriting criteria. These allegations are distinct from *Falcon,* where the plaintiff's injury was distinct from the injury of the proposed class members, and race was the only "unifying force" between them. We therefore find that the commonality requirement is satisfied under *Falcon.*

Finally, Citibank's argument that certification should be denied in this case because the factual contexts and individual damages vary among the class representatives and potential class members is not supportable. Although the factual context underlying each class member's claim may be distinct, "distinct factual contexts will be unified under a common claim for equitable relief." *Cristiano,* 115 F.R.D. at 247–48; *Allen,* 828 F.Supp. at 551. The unifying force or common claim for equitable relief in this case is the allegation that Citibank used its discretion to deny home loans to African–Americans. We believe that this allegation satisfies Rule 23(a)(2).

*v. Universal Builders, Inc.,* 501 F.2d 324 (7th Cir.1974) ("Clark I").

### 3. Typicality [13]

 Rule 23(a)(3) requires that the representative plaintiffs' claims be typical of those of the class as a whole. The Seventh Circuit defined the typicality requirement in *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225 (7th Cir.1983), as follows:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.

*Id.* at 232 (quoting H. NEWBERG, CLASS ACTIONS § 115(b) (1977)). The Court of Appeals went on to note that factual identity between the claims of the named plaintiffs and the other class members is not necessary to satisfy the typicality requirement and that "similarity of legal theory may control even in the face of differences of fact." *Id.*; *accord Retired Chicago Police Ass'n*, 7 F.3d at 597. In this case, the sole legal theory underlying Plaintiffs' claims is that Citibank's alleged redlining policy, coupled with its discriminatory pattern of denying home loans to African–American applicants, violates the Equal Credit Opportunity Act, the Fair Housing Act, and the Plaintiffs' constitutional rights under the Thirteenth Amendment.

Citibank opposes certification on the basis of typicality by arguing that:

> [e]ach decision to grant or deny a mortgage loan application depends upon a myriad of individual facts including income, existing credit obligations, credit history, employment history, the amount of financing being sought, and the value of the property being financed. Proof that Citibank allegedly applied its lending criteria in a discriminatory fashion to one applicant would not establish that any other rejected applicant was qualified to receive a loan under Citibank's lending criteria or that

Citibank discriminated in applying its lending criteria to that applicant.

*See* Def.'s Opp. at 9. In particular, Citibank argues that neither injunctive nor compensatory relief can be fashioned for an entire class "absent a challenge to a particular Citibank underwriting criteria." *Id.* According to Citibank, without such a challenge, the Plaintiffs' cannot prove discrimination, because the "plaintiffs must demonstrate that their claims are based upon the same core of factual allegations such that proof of one plaintiff's claims would establish the bulk of the elements of each class member's claims." *See* Citibank's Suppl.Mem. at 3–4 (citing *Allen*, 828 F.Supp. at 553).

Once again, Citibank misses the point. It is the allegedly discriminatory subjective application of Citibank's neutral underwriting criteria *as a whole* that may have adversely impacted the class. Plainly, the named plaintiffs' claims arise out of the same alleged course of conduct giving rise to the claims of the other class members. Although Citibank may ultimately prove that they did not engage in a pattern of race discrimination by rejecting African–Americans' applications for home loans, the determination of whether the named plaintiffs are typical class members for purposes of class certification does not depend upon resolving the merits of this case. The typicality requirement is satisfied because the named representatives' claims have the "same essential characteristics" as the potential class, *i.e.*, they were African–Americans who were allegedly denied home loan based upon their race or the racial composition of their neighborhoods.[14]

### 4. Adequacy of Representation

 Rule 23(a)(4)'s adequacy of representation requirement has two elements: " 'the adequacy of the named plaintiff's counsel, and the adequacy of representation pro-

---

**13.** Commonality and typicality are closely related and a finding of one generally compels a finding of the other. *See* NEWBERG ON CLASS ACTIONS, § 3.13.

**14.** In fact, Citibank's argument that different types of underwriting criteria may have been applied to applicants based on an "individualized treatment of the [applicant's] circumstances," *see Citibank's Suppl.Mem. at 5,* simply lends cre-

dence to Plaintiffs' theory that the neutral underwriting criteria were being applied to the class members with considerable subjectivity. If the statistical evidence shows that the class members were given "individualized treatment" based on "circumstances" related to their race or the racial composition of their neighborhoods, then Plaintiffs' claims may be valid.

vided in protecting the different, separate, and distinct interest[s]' of the class members." *Retired Chicago Police Ass'n,* 7 F.3d at 598 (quoting *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986) (en banc)). Thus, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting interests." *Fitzsimmons,* 805 F.2d at 697. Moreover, "it is settled law that the presence of even an arguable defense against the named plaintiff that is not applicable to the proposed class, or in this case subclass, can vitiate the adequacy of named plaintiff's representation." *Hardin v. Harshbarger,* 814 F.Supp. 703, 708 (N.D.Ill.1993) (citations omitted).

 With respect to the adequacy of counsel, Plaintiffs claim that, because counsel has previously acted on behalf of other classes, "they will be adequate again." Pls. Mem. at 8 (citing *Fitzsimmons,* 805 F.2d at 697). With respect to the class representatives, Plaintiffs assert that the interests of Buycks–Roberson are not divergent from or antagonistic to those of the class. Nonetheless, Plaintiffs assert that Selma Brooks and Calvin Roberson are adequate representatives, even if Buycks–Roberson is not.

Citibank's arguments are less conclusory. Citibank contends that the major focus of this litigation will be the individual members' financial qualifications for the home loans at issue. According to Citibank, the named Plaintiffs' lacked the qualifications to receive these loans under the applicable underwriting procedures. Citibank argues that these are "unique defenses" which will distract the class representatives from vigorously advocating on behalf of the class. *See Hardin,* 814 F.Supp. at 708; *Koos v. First Nat'l Bank of Peoria,* 496 F.2d 1162, 1164–65 (7th Cir. 1974). Citibank also claims that Plaintiff Buycks–Roberson has credibility problems that could harm the class members' case on cross-examination. Citibank Resp. at 11. Finally, Citibank asserts that Plaintiff Buycks–Roberson's delay in pursuing class relief (1½ years) makes her an inadequate representative. *See Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 704 (7th Cir.1993).

Citibank's contentions are meritless. First, Citibank's "unique defenses" argument is not persuasive, because any "distraction" attending individual issues has been minimized, at least for purposes of certification, by the Court's ruling on the Rule 23(b)(2) issues discussed below. Second, any credibility problems related to Buycks–Roberson are subsumed by the adequacy of the remaining two named representatives, Brooks and Roberson. Third, the asserted delay has no weight for purposes of the adequacy requirement. Not only was the delay in *Harriston* much longer (2½ years), but this case has, as indicated, met all relevant statutes of limitation and therefore satisfied any legitimate time requirements. *See* Mem.Op. at note 3. Giving due consideration to the requirements for certification under Rule 23(a)(4), the Court finds that both Plaintiffs and their counsel are adequate representatives in this case.

## B. Rule 23(b)(2)

Rule 23(b)(2) provides in relevant part:

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole[.]

FED.R.CIV.P. 23(b)(2).

 In *Edmondson v. Simon,* 86 F.R.D. 375 (N.D.Ill.1980), the district court found the "general applicability" requirement of Rule 23(b)(2) to mean that "the party opposing the class must have acted in a consistent manner toward members of the class so that [its] actions may be viewed as part of a pattern of activity." *Id.* at 382–83. However, "[a]ll the class members need not be aggrieved by or desire to challenge the defendants' conduct." *Id.* In the instant case, the general applicability requirement is satisfied by Plaintiffs' allegation that Citibank engaged in a subjective application of neutral underwriting criteria for the purpose of racial discrimination.

As a general matter, Rule 23(b)(2) is invoked in cases where injunctive or declaratory relief is the primary or exclusive relief sought. Where a plaintiff seeks both injunctive and monetary relief, however, courts have adopted various approaches to maintaining the economy of a class action while assuring comportment with due process in the allocation of individual damages. Some cases have allowed damages to be adjudicated in a Rule 23(b)(2) action where the monetary damages are merely ancillary to the injunction relief sought. *See, e.g., Edmondson,* 86 F.R.D. at 383; *Williams v. Lane,* 129 F.R.D. 636, 639 (N.D.Ill.1990); *Lawson v. Metropolitan Sanitary Dist. of Greater Chicago,* 102 F.R.D. 783, 793 (N.D.Ill.1983). One court notes, however, that:

> the cases in which this has been permitted appear to be cases in which the award of damages flows automatically from the grant of injunctive or declaratory relief, and in which the damages are subject to ready calculation on the basis of a formula or principles uniformly applicable to the class.

*Rice v. City of Philadelphia,* 66 F.R.D. 17, 20 (E.D.Pa.1974); *see also Fischer v. Dallas Fed. Sav. and Loan Ass'n,* 106 F.R.D. 465, 470 (1985), *aff'd,* 835 F.2d 567 (5th Cir.1988).

Efficiency and economy are the principal purposes of a class action procedure. *Falcon,* 457 U.S. at 159, 102 S.Ct. at 2371; *Vuyanich v. Republic Nat'l Bank of Dallas,* 723 F.2d 1195, 1199, 1200–01 (5th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct.

567, 83 L.Ed.2d 507 (1984). The Court simply does not believe that either of those purposes would be advanced by certifying a class which could claim compensatory damages as a class,[15] even if those damages are ancillary to the primary injunctive relief sought. The principle reason for this decision is that any monetary damages in this case do not appear, at this point in the litigation, to be "subject to ready calculation" on a basis "uniformly applicable to the class." Equitable relief, however, appears to be an appropriate remedy if in fact Citibank denied home loans to financially qualified applicants based on racial considerations. Equitable relief, unlike actual damages, is not subject to individualized interests and is therefore appropriate in this case. *See Williams v. Lane,* 129 F.R.D. 636, 640 (N.D.Ill.) ("[b]ecause members of the plaintiff class have homogenous interests as to the injunctive relief, their interests are sufficiently protected by the Rule 23(a)(4) requirement...."). Based on this reasoning, the Court certifies the class for injunctive relief only during the liability phase of the litigation and will appoint a special master to hear individual claims for damages, if necessary.

The only reported cases[16] the Court has found on this point are *Fischer v. Dallas Fed. Sav. & Loan Ass'n,* 106 F.R.D. 465 (N.D.Tex.1985), *aff'd,* 835 F.2d 567 (5th Cir. 1988); *Laufman v. Oakley Bldg. & Loan Co.,* 72 F.R.D. 116, 121 (S.D.Ohio 1976);[17] *Hanson v. Veterans Admin.,* 800 F.2d 1381, 1383 n. 2 (5th Cir.1986);[18] and *Dunn v. Midwest-*

**15.** As noted by the court in *Fischer,* in a class action for injunctive relief, the named plaintiffs may obtain individual damages, as well as costs and attorneys fees, in pursuing the class action to enjoin the alleged redlining practices, if they are successful in the liability phase of the case. 106 F.R.D. at 470 n. 7.

**16.** Plaintiffs cite several unreported cases involving mortgage discrimination where class certification was granted, namely, *Bishop v. Chemical Bank,* No. 93–1938 (N.D.Ill.); *United States v. Decatur Fed. Sav. & Loan Ass'n No. 1,* 92–Cv–2198 (N.D.Ga.1992); and *United States v. Chevy Chase Fed. Sav. Bank,* No. 94–1824–JG (D.D.C. 1994).

**17.** Citibank cited *Laufman* as support for its position that the class should not be certified given the numerous individual issues regarding the fi-

nancial qualifications. In *Laufman,* a Caucasian married couple sued a lending institution for denying their home loan based on an alleged policy of redlining. The district court denied class certification in an unreported decision. *Laufman,* 72 F.R.D. at 121. Thus, we cannot determine whether the *Laufman* court considered the possibility of certifying the class for injunctive or declaratory relief only rather than for damages. *See Fischer,* 106 F.R.D. at 471 n. 8.

**18.** Similarly, in *Hanson,* the district court denied a motion for class certification filed by plaintiffs who alleged redlining practices by the Veterans Administration in the appraisal process for guaranteeing home loans. Like the *Laufman* opinion, the reported appellate court decision in *Hanson* does not provide reasons for the denial of certification.

*ern Indemnity,* 88 F.R.D. 191 (S.D.Ohio 1980).[19]

The *Fischer* case supports the Court's conclusion that the facts of this case support certification of the class for injunctive relief only. *See Fischer,* 106 F.R.D. 465 (certifying class alleging illegal redlining by lending institution for purposes of injunctive or declaratory relief, but not for purposes of monetary damages due to presence of individualized claims). In *Fischer,* the defendant lending institution denied a home loan to the plaintiffs, an unmarried Caucasian couple, for property located in a minority area in the city of Dallas. The plaintiffs brought a class action challenging the denial as an impermissible practice of redlining. The district court certified the class for injunctive relief only under Rule 23(b)(2) and declined to certify the class for monetary damages due to the presence of individual issues with respect to the class members' qualifications for the loans. This certification order was not challenged on appeal. *See Fischer v. Dallas Fed. Sav. & Loan Ass'n,* 835 F.2d 567 (5th Cir. 1988).

In the instant case, the plaintiffs seek actual and punitive damages for all class members. The calculation of damages "depends upon the individual facts of each claimant's case" and "virtually all of the issues would have to be litigated individually" to "determine whether a particular alleged class member was entitled to any damages at all." *Rice v. City of Philadelphia,* 66 F.R.D. 17, 20 (E.D.Pa.1974). For example, the Court would be required to inquire into each of the loans, applicants and residences involved. A class member "would not be entitled to damages, either actual or punitive, if the individual [were] not qualified for the loan, or if the condition of the property caused the loan rejection." *Fischer,* 106 F.R.D. at 470. Because the plaintiff class is not sufficiently homogenous to allow the calculation of damages on the basis of "principles uniformly applicable to the class," *Rice,* 66 F.R.D. at

20, we conclude that the best solution in the instant case is to certify the class for purposes of determining Citibank's liability (if any) and fashioning injunctive relief which is based on the common interests of the class members. The Court then will require individual claims for damages to proceed separately under Rule 23(d)(2), which allows individual class members to opt-out of the monetary damages phase. *See generally Williams v. Burlington Northern, Inc.,* 832 F.2d 100, 103 n. 2 (7th Cir.1987) (bifurcating case may be best solution where plaintiff class is not sufficiently homogenous to ensure fairness in consideration of the damage claims of absent members); *Williams v. Lane,* 129 F.R.D. 636, 640–41 (N.D.Ill.1990) ("many courts have required that the case be bifurcated to allow the injunctive relief to be adjudicated under Rule 23(b)(2) and allow the damage claims to proceed separately ... or as individual claims").

The Court recognizes that the question of each class member's individual financial qualifications will be critical. Eliminating ancillary monetary damages from the liability phase merely simplifies the question; it does not provide a definitive resolution. On a motion for class certification we can assume that the allegations related to the class representatives' financial allegations are true. On summary judgment, that assumption evaporates, and the class representatives must produce enough evidence to support a judgment in their favor. For instance, to survive summary judgment on allegations that Citibank was redlining, Plaintiffs will need to produce evidence challenging Citibank's assertion that the loans were denied to African–American applicants who lived in predominantly African–American communities due to inadequate financial qualifications. Without such evidence neither the Court nor a jury could infer—on the basis of statistics alone—that Citibank engaged in discriminatory redlining. Therefore, financial qualifications, at least for the class representatives, are a prerequisite for injunctive relief.[20]

---

**19.** In *Dunn,* the court allowed broad discovery for purposes of allowing the non-certified minority plaintiffs to prove redlining by an insurance company.

**20.** Injunctive relief can be fashioned to prevent Citibank from redlining and/or to require Citibank to (re)consider the class members' applications without regard to the racial composition of their respective neighborhoods, but injunctive re-

Although Citibank maintains that the individual qualifications of each potential class member should defeat certification, the Court has solved this problem by adopting the "class-wide presumption capable of rebuttal as to individual claimants used in securities fraud cases," *see generally Jaroslawicz v. Engelhard Corporation*, 724 F.Supp. 294, 301 (D.N.J.1989), antitrust actions, *In re Sugar Industry Antitrust Litig.*, 73 F.R.D. 322, 347 (E.D.Pa.1976), and class actions brought under Title VII, *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 470 (8th Cir. 1984).

Under this approach, the class representatives will need to offer evidence of their own financial qualifications before the Court determines the merits of their claims. Evidence that the class representatives were qualified for loans but rejected by Citibank will create a presumption of qualification for the entire class for purposes of liability. The individual class members' financial qualifications and individual damages (if any) can then be determined after a resolution on the merits by committing these claims to a neutral judicial officer such as a special master. *See generally Romasanta v. United Airlines, Inc.*, No. 70 C 1157 (N.D.Ill.) (Moran, J.) (court appointed special administrative master to determine the whether individuals could be members of the class and the kind of relief to be granted).[21]

The liability phase of this case will be a representative action. In other words, no relief is available to the class unless the class representatives offer sufficient evidence of: (1) their financial qualifications for home loans; and (2) the statistical disparity between loans denied to applicants of the Caucasian and African–American races and applicants in different census tracts or geographical areas. Thus, although discovery will be limited on the issue of financial qualifications to the representative parties for purposes of liability, the Court realizes that it must allow Plaintiffs the kind of discovery that will permit them to prove the existence of any statistical disparity between the relevant comparison groups, as outlined in *Cartwright*, 880 F.2d at 922,[22] and other disparate impact cases involving the subjective application of otherwise facially neutral criteria. *See e.g., Cedillo v. International Ass'n of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 12 (7th Cir.1979) ("where the need for discovery ... to obtain the requisite statistical data to substantiate the claims asserted is clear, and where plaintiff [was] ... effectively denied the opportunity to engage in that discovery, ... summary judgment is inappropriate").[23] *See also Perez v. FBI*, 707 F.Supp. 891 (W.D.Tex. 1988) (for a general overview on the theory of disparate impact and the types of evidence used to prove discrimination under this theory).

The Court's comments regarding the monetary damages phase are brief, given that this class is certified only for injunctive relief and there has not yet been a determination of liability. Several district courts have discussed the due process concerns related to the need to provide notice to absent class members in classes certified under Rule 23(b)(2) that contain claims for both injunctive relief and monetary damages. *See Allen v. Isaac*, 100 F.R.D. 373, 375–77 (N.D.Ill. 1983) (Hart, J.); *Williams v. Lane*, 129 F.R.D. 636, 640–41 (N.D.Ill.1990) (Shadur, J.). To avoid claim preclusion and ensure

---

lief cannot cure bad credit, and it cannot force a lending institution to make a loan if that credit is wanting. Injunctive relief also cannot force a bank to take a bad risk on a particular property, *see Cartwright*, 880 F.2d at 922.

**21.** The Court is aware that numerosity problems could arise if the proposed class does not contained a sufficient number of financially qualified applicants. Rule 23(c)(1) and (c)(4) provide for these contingencies, and the Court will exercise its power under these provisions if necessary.

**22.** In *Cartwright*, the Seventh Circuit wrote that "the obvious flaw in the appellants' 'disparity'

argument is their failure to identify any relevant statistical evidence of the number of residential loan applications American Savings received from financially qualified borrowers *in any particular census tract or geographic area*, and how many of those applications it rejected." *Id.* (emphasis added).

**23.** The Memorandum Opinion and Order issued today on the related discovery disputes clarifies the Court's view on the appropriate scope of discovery for this lawsuit.

due process, courts are advised to give notice regarding a class member's right to opt-out of the damages phase and to raise any objections to the class representation. *See Rice,* 66 F.R.D. at 20. Although the issue of notice is not clear cut in Rule 23(b)(2) cases, the issue is not yet relevant in this case because the Court is certifying the class for injunctive relief only. *Williams,* 129 F.R.D. at 639 (where case is certified for injunctive relief "[m]embers of such a class generally share a common interest in the direction and outcome of the case ... and a court does not violate the rights of individual class members by failing to provide individual notice ... or an opportunity to withdraw and pursue claims individually"). If Citibank is ultimately found liable of redlining, the Court will address the issue of notice under Rule 23(b)(2).

Finally, the definition of the class in this case is simplified by certifying the class for injunctive relief only. As the court in *Rice* stated:

> Defining a class as consisting of all persons who have been or will be affected by the conduct charged to the defendants is entirely appropriate where only injunctive or declaratory relief is sought.

66 F.R.D. at 20. The class members in this case can be defined by reference to Citibank's alleged conduct, namely, African–Americans who were denied home mortgage loans by Citibank on the basis of improper racial considerations.

### CONCLUSION

The Plaintiffs' Motion for Class Certification is granted under Rule 23(b)(2) for purposes of injunctive relief only. The following class of persons is certified:

> All African–Americans who filed applications for home loans to Citibank on or after July 6, 1992, and whose applications were rejected because they were African–American and/or the racial composition of the neighborhoods in which their properties were located was predominantly African–American.

The Court expressly notes that under Rule 23(c)(1), the Court's order certifying this class is conditional and may be amended before any decision on the merits. In addition, Rule 23(c)(4) empowers the Court to divide the class into subclasses. Should it appear in the course of litigation that the individual issues in this case prevent efficient or just resolution, this Court shall not hesitate to exercise the authority it retains to create appropriate sub-classes represented by separate counsel or to take whatever other measures are necessary to ensure fairness of representation.

Plaintiffs are directed to file a Second Amended Complaint within fourteen (14) days from the date of this Order in conformance with the Court's directive in footnote 3. Citibank will have twenty (20) days to answer. This case will be set for status on July 24, 1995, at 9:00 a.m. to discuss further proceedings in this case. The parties are directed to file a joint proposed discovery and litigation schedule which will govern this case for the Court's evaluation before July 20, 1995.